Mr. Justice BRADLEY,
dissenting:
I feel obliged to dissent from the conclusion to which a majority of the court has come on the public-question in this cause, but shall content myself with stating briefly the grounds of that dissent, w.ithout entering into any prolonged argument on the subject..
Meantime, however, it is proper to say that I deejn it very doubtful whether the court has any jurisdiction at all over this particular case. The eomplainauts claim the property in question under the terms, and what they regard ¿s the true construction, of the trust-deed of July, 1844, whereby the property was conveyed to the city of Memphis “for the location of the naval depot;” and to Wheatley, trustee for *640 the grantors, “ in ease the same shall not be appropriated by the United States for that purpose.” This deed was acknowledged on the 19th of September, 1844, and (probably at the same time) a deed dated 14th of September, 1844, was executed by the city to the United States, conveying the land in fee without any conditions or uses expressed. Operations for erecting and establishing a navy yard on the premises were commenced and were continued for several years, but .were finally abandoned, and on the 5th of August, 1854, Congress, by an act, ceded the property to the city of Memphis for the use and benefit of the city. The defendants, the city of Memphis, claim both legal and beneficial title to the property under this act of Congress, and the Supreme Court of Tennessee sustained the claim — or, at least, did not sustain the adverse claim of the complainants. The claim of the complainants was not based on this act of Congress, but on the original deed of 1844, which limited the estate in the lands to their trustee “ in ease the same shall not be appropriated by the United States for that purpose,” i. e'., the purpose of a navy yard.- They claim that by the true construction of this clause a right to the land accrued to them, as well by an abandonment of the project of a navy yard'as by its netmr being adopted. The' conduct of the government in relation to the land, it is true, is claimed by them to "bo such as calls into operative effect the clause of the deed on which they rely. They construe that conduct as an abandonment of the enterprise. The act of cession by Congress to the city of Memphis is only one fact in a long chain of circumstances which they educe to show such abandonment.
It seems to me, therefore, that their claim is based entirely on the deed of 1844; and that the subsequent action of .the government, so far as it has any effect in the case, is merely matter of evidence on the question of fact of abandonment; and that the failure of the government, from the beginning, to take any steps for establishing a navy yard on the land would have been no more a mere fact in pais to be. proved in order to support the claim of the complainants, than were all the acts of the government which did, in fact, *641 take place. Proving that the government did not appropriate the land for a navy yard is a very different thing from setting np a claim to the land under an act of Congress.
I think, therefore, that in this case there was no'title or right claimed by the appellants under any statute of, or authority exercised under, the United States; and consequently that there was no decision against any such title; and, therefore, that this court has no jurisdiction.
But supposing, as the majority of tfie court holds, that it has jurisdiction, I cannot concur in the conclusion that'we can only decide the Federal question raised by the record. If we have jurisdiction at all, in my judgment we have jurisdiction of the case, and not merely of a question in it. The act of 1867, and the twenty-fifth section of the Judiciary Act both provide that a final judgment or decree in any suit in the highest court of a State, where is drawn in question certain things relating to the Constitution or laws of the United States, or to rights or inimunities claimed under the United States, and the decision is adverse to such Constitution, laws, or rights, may be re-examined and reversed or affirmed in the Supreme Court of the United States upon a writ of error. Had the original act stopped here there could have been no difficulty. This act derives its authority and is intended to carry into effect, at least in part, that clause of the Constitution which declares that the judicial power shall extend to all cases, in law' and equity, arising under this Constitution, the laws of the United States, and treaties made under their authority — not to all questions, but to all cases. This word “ cases,” in the residue of the section, has frequently been held to mean suits, actions, embracing the whole cases, not mere questions in them; and that is undoubtedly the true construction. The Constitution, therefore, would have authorized a revision by the judiciary of the United States of all cases decided in State courts in which questions of United States law or Federal rights are necessarily involved. Congress in carrying out that clause could have so ordained. And the law referred to, had it *642 stopped at the point to which I have quoted it above, would clearly have been understood as so ordaining. But the twenty-fifth section of the Judiciary Act went on to declare that in such'cases no other error should be assigned or regarded as a ground of reversal than such as immediately respected the question referred to as the ground of jurisdiction. It having been early decided that Congress had power to regulate the exercise of the appellate jurisdiction of the Supreme Court, the court has always considered itself bound by this restriction, and as authorized to reverse judgments of State courts only for errors in deciding the Federal questions involved therein.
Now, Congress, in the act of 1867, when revising the twenty-fifth section of the Judiciary Act,, whilst following the general frame and modes of expression of that section, omitted the clause above referred to, wlfich restricted the court to a consideration of the Federal questions. This omission cannot be regarded as having ni» meaning! The clause by its presence in the original act meant something, and effected something. It had the effect of restricting the consideration of the court to a certain class of questions as a ground of reversal, which restriction would not have existed without it. The omission of the clause, according to a well-settled.rule"of construction, must necessarily have the effect of removing the restriction which it effected in the old law.
In my judgment, therefore, if the court had jurisdiction of the case, it was bound to consider not only the Federal question raised by the record, but the whole case. As the court, however, has decided otherwise, it is not proper that I should express any opinion on the merits.
The'ease having been reai’gued, as well as argued originally, before the appointment of the CHIEF JUSTICE, be took no part in the judgment.